FILED
2012 Aug-29  PM 03:07
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| DORIS RUFFINO, as Personal Representative of the Estate of Anthony Ruffino, ) ) ) ) | |
| Plaintiff, ) ) | |
| vs. ) ) | CASE NO. 2:08-CV-0002-SLB |
| CITY OF HOOVER; SGT. RODERICK GLOVER; ) ) ) ) | |
| Defendants. ) | |

**MEMORANDUM OPINION**

On September 30, 2010, this court entered an Order, (doc. 73),[1] which granted in part and denied in part plaintiff's Motion for Partial Summary Judgment, (doc. 55), and defendants' cross Motion for Summary Judgment, (doc. 58). Defendants appealed. (Docs. 74 and 75.) The Eleventh Circuit Court of Appeals vacated this court's Order and remanded the case to this court for purposes of "entering a different order that provides full insight into the details of the district court's findings and conclusions." *Ruffino v. City of Hoover*, 467 Fed. Appx. 834, 835 (11th Cir. 2012).

Plaintiff Anthony Ruffino filed this suit against defendant City of Hoover and its officer, Sergeant Roderick Glover, following Ruffino's arrest for disorderly conduct on November 3, 2006. Ruffino alleges that the arrest was unlawful, that the force used to arrest him was excessive, and that his subsequent prosecution was malicious – all in violation of the Fourth Amendment of the United States Constitution – against the City and Glover,

---

[1]Reference to a document number, ["Doc. ____"], refers to the number assigned to each document as it is filed in the court's record.

individually; he also alleged defendants were deliberately indifferent to his medical needs in violation of the Fifth Amendment to the United States Constitution.  Also, he alleges false imprisonment and assault and battery (state-law excessive force) against the City and Glover, individually, and malicious prosecution and intentional infliction of emotional distress against Glover, individually.[2]  (Docs. 52 & 53; Doc. 60 at 18 n.6.)

In his Motion for Partial Summary Judgment, Ruffino moved for summary judgment as to all his claims except his federal deliberate indifference claim, and his state law claim for intentional infliction of emotional distress against Glover.   (Doc. 55.)  The City and Glover moved for summary judgment on all claims.  (Doc. 58.)  The court again granted in part and denied in part the parties' Motions for Summary Judgment.  The court's Order held:

> 1.  As to Count I of Plaintiff's Amended Complaint, "Claims of Malicious Prosecution in Violation of the Fourth Amendment (Asserted Through § 1983)," plaintiff's Motion for Partial Summary Judgment, (doc. 55), is **DENIED**; defendants' Motion for Summary Judgment, (doc. 58), as to Count I against Glover in is individual capacity is **DENIED**, and as against the City is **GRANTED**.
>
> 2.  As to Count II of plaintiff's Amended Complaint, "Unlawful Seizure in Violation of the Fourth Amendment (Asserted Through § 1983)," plaintiff's Motion for Partial Summary Judgment, (doc. 55), as to Count II against Glover in his individual capacity is **GRANTED**, and as against the City is **DENIED**; defendants' Motion for Summary Judgment, (doc. 58), as to Count II against Glover in his individual capacity is **DENIED**, and as against the City is **GRANTED**.
>
> 3. As to Count III of plaintiff's Amended Complaint, "Excessive Use of Force in Violation of the Fourth Amendment (Asserted Through § 1983)," plaintiff's Motion for Partial Summary Judgment, (doc. 55), is **DENIED**;

---

[2]The Complaint also contained the following claims that the court dismissed by prior Order: (1) claims against Glover in his official capacity; (2) claims against the Hoover Police Department; (3) state-law claims against the City for malicious prosecution, negligent supervision, training, and retention, and intentional infliction of emotional distress; and (4) a claim for injunctive relief.  (*See* doc. 1; doc. 53.)

defendants' Motion for Summary Judgment, (doc. 58), as to Count III against Glover in his individual capacity is **DENIED**, and as against the City is **GRANTED**.

 4.  As to Count IV of plaintiff's Amended Complaint, "Deliberate Indifference to Serious Medical Needs In Violation of the Fifth Amendment (Asserted Through § 1983)," defendants' Motion for Summary Judgment, (doc. 58), is **GRANTED**.

 5.  As to Count V of plaintiff's Amended Complaint, "Assault and Battery," plaintiff's Motion for Partial Summary Judgment, (doc. 55), as to Glover, in his individual capacity, is **GRANTED**, and as to the City is **DENIED**; defendants' Motion for Summary Judgment, (doc. 58), as to Count V is **DENIED**.

 6.  As to Count VI of plaintiff's Amended Complaint, "False Imprisonment," plaintiff's Motion for Partial Summary Judgment, (doc. 55), as to Glover, in his individual capacity, is **GRANTED**, and as to the City is **DENIED**; defendants' Motion for Summary Judgment, (doc. 58), is **DENIED**.

 7.  As to Count VII of plaintiff's Amended Complaint, "Malicious Prosecution," plaintiff's Motion for Partial Summary Judgment, (doc. 55), as to Glover, in his individual capacity, is **DENIED**; defendants' Motion for Summary Judgment, (doc. 58), is **DENIED**.

(Doc. 73.)

 For the reasons set forth below, the court reaffirms its prior Order.

## I. <u>SUMMARY JUDGMENT STANDARD</u>

 The party moving for summary judgment bears the initial burden of showing "that there is no genuine dispute as to any material fact and [he] is entitled to judgment as a matter of law."[3]  Fed. R. Civ. P. 56(a); *see Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see also Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  Once the moving party has met his burden, the non-moving party must go beyond the pleadings and

---

 [3]At the time this case was decided, the former Rule 56(c) applied and it stated that the moving party had the burden of showing "that there is no genuine issue as to any material fact and [he] is entitled to a judgment as a matter of law."  Former Fed. R. Civ. P. 56(c). This slight change in Rule 56 does not disturb the court's holding.

show that there is a genuine issue for trial.  Fed. R. Civ. P. 56(e); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In deciding a motion for summary judgment, the court's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249.  Credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are left to the jury, and, therefore, evidence favoring the non-moving party is to be believed and all justifiable inferences are to be drawn in his favor. *See id.* at 255.  Nevertheless, the non-moving party "need not be given the benefit of every inference but only of every reasonable inference." *Evans v. Stephens*, 407 F.3d 1272, 1284 (11th Cir. 2005) (Carnes, J., concurring specially) (quoting *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999)).

"The applicable Rule 56 standard is not affected by the filing of cross-motions for summary judgment." *Godard v. Alabama Pilot, Inc.*, 485 F. Supp. 2d 1284, 1291 (S.D. Ala. 2007) (citing *Gerling Global Reinsurance Corp. of America v. Gallagher*, 267 F.3d 1228, 1233 (11th Cir. 2001)).  "Where, as here, the parties file cross-motions for summary judgment, a court 'must consider each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law.'" *Bio-Medical Applications of Georgia, Inc. v. City of Dalton*, 685 F. Supp. 2d 1321, 1327 (N.D. Ga. 2009) (quoting *Rossignol v. Voorhaar,* 316 F.3d 516, 523 (4th Cir.2003)).  "Cross-motions for

summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed." *United States v. Oakley*, 744 F.2d 1553, 1555 (11th Cir. 1984) (internal quotations).

## II. **STATEMENT OF FACTS**[4]

On November 3, 2006, Kathi Lee, Ruffino's daughter, telephoned him to tell him that her house at 182 Brook Trace Drive in Hoover, Alabama had been damaged by a fire. (Doc. 57-1, Ex. A, at 32-33.)  At the time of the fire, Kathi Lee did not reside at the house; the house was occupied by her estranged husband, Jonathan Lee, and her son, Nicholas Lee. (Doc. 57-9, Ex. H, at 9-10; Doc. 57-10, Ex. I, at 9, 17-18.)  When Ruffino arrived, the road in front of the house was blocked by fire and police vehicles and a number of firefighters and police officers were present.  (Doc. 57-1, Ex. A, at 33-37.)  Ruffino saw Jonathan Lee outside the house speaking to two men he did not recognize.  (*Id*. at 39-40).  Ruffino entered the house to survey the damage.  (*Id.* at 41.)

The fire had damaged the garage and the exterior of the house; the interior of the house had some smoke damage.  (Doc. 57-4, Ex. C, at 39.)  The officers and firefighters investigated only the exterior of the house as part of the fire investigation.  (Doc. 57-5, Ex. D, at 100.)

---

[4]Because the parties filed cross-motions for summary judgment, the Statement of Facts indicates those facts that are disputed or that are unclear in the record.  Where necessary in the discussion, the court has construed disputed facts in favor of the non-moving party, and drawn all reasonable inferences in favor of the non-moving party.

Sergeant Glover and other officers from the Crime Scene Unit of the Hoover Police Department – Detective Erik Eichhorn, Detective Mark Tant, and Officer Delvin Brown – had responded to the Fire Department's request that the Crime Scene Unit investigate the fire. (Doc. 57-3, Ex. B, at 99-101; doc. 57-4, Ex. C, at 36-37; doc. 57-5, Ex. D, at 36; doc. 57-7, Ex. F, at 32-33; doc. 58-11, Ex. 6, ¶ 8.) After arriving on the scene, Glover interviewed Jonathan Lee and Nicholas Lee. (Doc. 58-11, Ex. 6, ¶ 8.)  He did not initially speak to Ruffino. (Doc. 57-3, Ex. B, at 112, 159.)  Glover testified that he had assumed Ruffino was a relative of the residents. (*Id.* at 112-13.)

At some point, Jonathan and Kathi Lee began arguing inside the house. (Doc. 57-1, Ex. A, at 47.)  Ruffino testified that he intervened in an effort to stop the argument. (*Id.* at 50-51, 65-66; see also doc. 57-9, Ex. H, at 23-25, 27).  According to Nicholas Lee, his grandfather did not curse or use abusive or obscene language. (Doc. 57-10, Ex. I, at 71).  The only people in the house during this argument were Ruffino and the Lees. (Doc. 57-9, Ex. H, at 48-49; doc. 57-10, Ex. I, at 27-29, 71.)

The officers at the scene testified that they had heard male voices yelling inside the house while investigating the fire outside the house. (Doc. 58-11, Ex. 6, ¶ 10; doc. 58-9, Ex. 8 ¶ 5; doc. 58-7, Ex. 10, ¶ 5; doc. 58-10, Ex. 7, ¶ 5.)  According to Glover, while standing inside the garage, he heard Ruffino and Jonathan Lee yelling . (Doc. 57-3, Ex. B, at 130; doc. 58-11, Ex. 6, ¶ 9.) He testified that he heard Ruffino say "son of a bitch." (Doc. 57-3, Ex. B, at 122, 124.) Glover could not understand anything else that was said. (*Id.* at 134-35.) He testified that he had assumed the epithet was directed at Jonathan Lee, but he does not

6

know who was in the room with Ruffino when the words were spoken.  (*Id.* at 127, 154.)  He testified that whether "son of a bitch" is obscene depends on the context.  (*Id.* at 125.)

None of the police officers on the scene were actually in the living room with Ruffino when the alleged "son of a bitch" statement was made.  (*Id.* at 130-131, 146.)  The officers in the garage and outside the house could only hear yelling, loud talking, and arguing.  (*Id.* at 130; doc. 57-7, Ex. F, at 50-51.)  Glover had heard Kathi Lee and Jonathan Lee arguing in several different locations during the time they were at the house.  (Doc. 57-3, Ex. B, at 146.)  He did not arrest Kathi Lee or Jonathan Lee at that time because "they were just arguing," and he could not tell what they were saying.  (*Id.* at 147.)

Glover left the garage and entered the house.  (*Id.* at 130-31.)  Brown, Tant, and Eichhorn also entered the house at the sound of the loud voices.  (Doc. 58-9 ¶ 5; Doc. 58-10 ¶ 5; Doc. 58-7 ¶ 5; Doc. 57-4, Ex. C, at 69.)  Glover testified that Ruffino was talking loudly to Jonathan Lee when he entered the house.  (Doc. 57-3, Ex. B, at 131.)  He testified that he did not remember any words said by anyone once he entered the home, but Ruffino was "talking loudly," and "appeared very agitated," while Jonathan Lee "was just more or less listening."  (*Id.* at 138.)  Ruffino and Jonathan Lee were standing about two feet apart when Glover got between them and told Ruffino to calm down.  (*Id.* at 137-38; doc. 57-1, Ex. A, at 66-67.)  Glover stood very close to Ruffino.  (Doc. 57-2, Ex. A, at 87; doc. 57-7, Ex. F, at 56.)

At this point, Ruffino touched Glover.  The parties dispute how hard Ruffino touched Glover.  Glover claims that Ruffino pushed him hard enough to cause Glover to stagger

backwards to catch his balance.  (Doc. 57-3, Ex. B, 138-140; see also doc. 57-5, Ex. D, at 79; doc. 58-7, Ex. 10, ¶ 5.)  Ruffino testified that he touched Glover on the outside of his arms to calm him down.  (Docs. 57-1, Ex. A, at 52; doc. 57-2, Ex. A, at 87.)  Glover testified that Ruffino did not say anything to him.  (Doc. 57-3, Ex. B, at 150.)

Ruffino testified that Glover had neither identified himself as a police officer nor told him to calm down.  (Doc. 57-1, Ex. A, at 83-84.)  Glover does not claim that he identified himself as a police officer, although he does claim that he told Ruffino to calm down and to leave the premises.  (Doc. 58-11, Ex. 6, ¶ 11.)  At this point, according to Glover, Ruffino shoved him.  (Doc. 57-3, Ex. B, at 138.)  Glover testified that he told Ruffino he was under arrest.  (*Id.* at 141.)  He then decided to place Ruffino on the floor and handcuff him to prevent any further combative behavior and to ensure the safety of the firefighters and the officers that were nearby conducting the fire investigation.  (Doc. 58-11, Ex. 6, ¶ 11.)

Glover and Eichhorn told Ruffino to get on the ground.  (Doc. 57-3, Ex. C, at 75-76.) Ruffino replied that was not necessary, that he was a 70 years old and only weighed 150 pounds, and that they did not have to put him down on the ground.  (Doc. 57-1, Ex. A, at 53, 56.)  Glover and Eichhorn testified that they told plaintiff he was under arrest.  (Doc. 57-3, Ex. B, at 141; Doc. 57-5, Ex. D, at 82.)  Glover testified that he arrested Ruffino because he was being disorderly and interfering with the investigation.  (Doc. 57-3, Ex. B, at 54.) Eichhorn testified he arrested Ruffino for pushing Glover.  (Doc. 57-5, Ex. D, at 82-85.)

Ruffino testified that he voluntarily got down on the floor after being told several times to do so.  (Doc. 57-1, Ex. A, at 56, 77-78.)  Afterwards, the officers got on top of him.

(*Id.* at 56.)  Eichhorn testified that the officers had "used a little force" to put Ruffino on the ground.  (Doc. 57-5, Ex. D, at 56-57, 89.)  Eichhorn had grabbed Ruffino's left arm, put it behind his back, and held Ruffino by his wrist, while Tant had grabbed his right arm.  (Doc. 57-3, Ex. B, at 98, 140; doc. 57-4, Ex. C, at 77; doc. 57-5, Ex. D, at 82, 118-19.)  Ruffino did not actively resist the officers, although Glover testified he was "noncompliant." (Doc. 57-3, Ex. B, at 54-56, 140-141.)  Tant testified that they put Ruffino down on his knees and then placed him down on the floor on his chest and stomach.  (Doc. 57-4, Ex. C, at 77.)

Eichhorn went to his car to retrieve handcuffs.  (Doc. 57-5, Ex. D, at 120-21.) During the time Eichhorn was gone, three or four minutes, Ruffino remained on the floor with Glover and Tant either kneeling beside or sitting on top of him.  (Doc. 57-1, Ex. A, at 80; doc. 57-3, Ex. B, at 95-96; doc. 57-4, Ex. C, at 82-83.)  Tant testified he held Ruffino by his arms and shoulders so that he could not move and Glover testified that he knelt beside Ruffino.  (Doc. 57-4, Ex. C, at 84-87; doc. 58-11, Ex. 6, ¶ 17.)  Ruffino disputes that Glover knelt beside him; rather, he testified that Glover knelt on him.  (Doc. 57-1, Ex. A, at 53-55, 70, 77-80.)

According to Ruffino, he was as flat as possible on the floor and Glover was on his side holding his arms back and pressing on his shoulder.  (*Id.* at 54.)  At this time, Ruffino was not moving.  (Doc. 57-3, Ex. B, at 96, 142.)  Ruffino testified that he told the officers several times that he could not breathe and that he had a bad heart; he also asked the officers to get off of him.  (Doc. 57-1, Ex. A, at 79-80.)  He told the officers, "[Y]ou're hurting me

real bad, it's killing me, there's something wrong with my shoulder." (*Id.* at 80-81). When he complained about pain, the officers eased up a little bit. (*Id.* at 76.)

Glover heard Ruffino complain of shoulder pain while he was on the ground. (Doc. 57-3, Ex. B, at 86-87.) However, he denied hearing Ruffino complain of heart problems at the scene. (*Id.* at 87.) The Arrest and Transport Log that Glover prepared contemporaneous with the arrest noted that Ruffino had heart problems. (*Id.* at 87-88; doc. 57-11, Ex. K at 5.)

The Hoover Police Department dispatched Officer Michael Weems to transport Ruffino to the jail. (Doc. 57-8, Ex. G, at 11.) Weems arrived at the house to find Glover by the street with Ruffino, whom Weems described as "elderly." (*Id.* at 12-13.) Ruffino was standing very erect, appeared agitated, and his face and arms were very red. (*Id.* at 18.) Weems testified that Ruffino complained that his shoulder hurt. (*Id.* at 18-19; 32.) Weems then told Glover he would "swap out handcuffs" and cuff Ruffino's hands in the front because of his shoulder pain. (*Id.* at 19.) The Hoover Police Department's standard operating procedure is to handcuff individuals with their hands behind their back, but officers may handcuff an arrestee with his hands in the front if necessary because of a medical condition or injury. (*Id.* at 33-34.) Glover testified that he did not hear Ruffino complain to Weems about shoulder pain. (Doc. 57-3, Ex. B, at 84.)

Weems repositioned the cuffs and assisted Ruffino into the patrol car. (Doc. 57-8, Ex. G, at 19-20.) Ruffino testified that getting into the patrol car caused him pain. (Doc. 57-1, Ex. A, at 71.) At the jail, Ruffino was examined by a paramedic; the paramedic advised

Ruffino that he needed to go to the hospital.  (Doc. 57-1, Ex. A, at 60, 72; doc. 57-11, Ex. M, at 10.)

An officer took Ruffino to the hospital.  (Doc. 57-1, Ex. A, at 60-61.)  At the hospital, Ruffino's shoulder was x-rayed and, later, a doctor told him he had serious problems and needed surgery right away.  (*Id.* at 62-63.)  Ruffino had suffered a complete tear of his left rotator cuff.  (Doc. 57-11, Ex. N, at 12.)  He had surgery to repair his left rotator cuff two weeks later on November 17, 2006.  (*Id.*)  After his surgery, Ruffino wore braces, and underwent rehabilitation and physical therapy for several months.  (*Id.*)  Following the first surgery, he could not dress himself, drive a car, pick up a coffee cup or do most everyday things.  (Doc. 57-2, Ex. A, at 114-17.)  He had a second surgery because he was not achieving adequate mobility after the first surgery due to the severity of the injury.  (*Id.* at 106-112, 119; Doc. 57-11, Ex. N, at 12.)  The cost of his surgeries was approximately $56,000.00.  (Doc. 57-2, Ex. A, at 158-59.)

Glover had arrested Ruffino for "disorderly conduct."  (Doc. 57-11, Ex. L, at 7.)  The Arrest Report noted the charge was disorderly conduct in violation of Ala. Code § 13A-11-7(a)(3), and that the "location" was a "residence."  (*Id.*)  That same day, Glover swore out a Complaint against Ruffino for disorderly conduct.  (Doc. 57-11, Ex. O, at 14.)  Glover testified that "disorderly conduct" is when someone is loud and using abusive, cursing or threatening language.  (Doc. 57-3, Ex. B, at 120-21.)  He testified that he understood that Alabama law required that the conduct alleged to be disorderly must take place in public to be actionable.  (*Id.* at 126.)  The Complaint states:

11

Before me, the undersigned authority, personally appeared this day the undersigned complainant who, upon first being duly sworn, states on oath that [he] has probable cause for believing, and does believe, that Anthony Ruffino, defendant, . . . did, prior to the commencement of this action, on or about November 3, 2006 . . . commit the offense of DISORDERLY CONDUCT within the:

County of Jefferson

City of Hoover . . . in that [he] did . . . WITH THE INTENT TO CAUSE PUBLIC INCONVENIENCE, ANNOYANCE OR ALARM, OR RECKLESSLY CREATING A RISK THEREOF, HE . . . IN A PUBLIC PLACE USE[D] ABUSIVE OR OBSCENE LANGUAGE OR [MADE] AN OBSCENE GESTURE TO WIT: the defendant became loud and boisterous and interfered with an arson investigation. After being warned to calm down and move out of the area the defendant pushed Sgt. Rod Glover. The defendant was using abusive [and] obscene language toward the victim of the fire.

(Doc. 57-11, Ex. O, at 14.)

According to the City's procedures, when an officer swears out a Complaint for disorderly conduct, he is required to set out the specific language used by the alleged offender. (Doc. 57-7, Ex. F, at 92-93.) Glover did not note in the Complaint the specific "abusive and obscene" language Ruffino had used. (Doc. 57-3, Ex. B, at 129; Doc. 57-11, Ex. O, at 14.)

Six months after his arrest, Ruffino filed a Verified Statement of Claim with the City, which alleged damages suffered as a result of his alleged wrongful arrest. (Doc. 57-11, Ex. R, at 20.) Nicholas Derzis, Chief of Police for the City, testified that he did not know if anyone had reassessed the disorderly-conduct charge after Ruffino filed his Claim. (Doc. 57-12, Ex. S, at 20.) He met with Ruffino's attorneys sometime before July 2007 to discuss Ruffino's prosecution, as well as his injuries sustained during his arrest. (*Id.* at 7-9.) As a result of this meeting, Derzis reviewed the Arrest Report and spoke to Glover's immediate

12

supervisor about Ruffino's arrest.  (*Id.* at 9-10.)  However, he did not speak to any other

officer, including Glover, about Ruffino's arrest or his Claim.  (*Id.* at 19.)

 Derzis testified that he was aware of the elements for a charge of disorderly conduct

under 13A-11-7(a)(3), which included proof of abusive or obscene language and excluded

conduct occurring in a residence to which the alleged offender was invited.  (*Id.* at 13-14.)

He conceded that the Arrest Report did not specify the abusive or obscene language used and

stated that the incident occurred inside a residence.  (*Id.* at 14-16, 18.)

On October 24, 2007, Ruffino was tried and convicted in Hoover Municipal Court of

disorderly conduct in violation of Ala. Code § 13A-11-7(c).  (Doc. 63-1, Ex. A.)  Ruffino

appealed and, on May 21, 2008, the Circuit Court of Jefferson County, Bessemer Division,

dismissed the Complaint against Ruffino.  The Circuit Court held, "On oral Motion to

Dismiss on behalf of the defendant through his attorney, the City of Hoover objecting to the

same, however stipulating to certain uncontroverted facts, the Court finds as a matter of law

that this case is due to be dismissed."  (Doc. 57-11, Ex. P, at 16.)  According to Ruffino's

attorney in that case, the stipulated facts were:

> 1.     Mr. Ruffino was at the location in question by invitation of his
> daughter, the owner of the residence.
>
> 2.     That the incident which formed the basis for the complaint took
> place in the living room of the residence, his daughter's private home.

(*Id.*, Ex. Q, at 18.)

All Hoover police officers attend the police academy at the beginning of their service.

(Doc. 57-12, Ex. S, at 80-81).  This represents the only training the officers receive on

elements of crimes contained in the Code of Alabama.  (*Id.*)  The academy also provides field training on arrest procedures.  (*Id.*)  The City follows a "plus one" policy on the use of force; this policy authorizes the use of a level of responsive force by one step higher on the force continuum than the level of resistant force used by the suspect.  (Doc. 58-11, Ex. 6, ¶ 13.)

### III.  DISCUSSION

Ruffino moved for summary judgment on all claims except his federal deliberate indifference claim, and his state law claim for intentional infliction of emotional distress against Glover, (doc. 55); the defendants – the City of Hoover and Glover – moved for summary judgment on all claims, (doc. 57).

## A.  FEDERAL CLAIMS

Ruffino initiated this action against defendants Glover and the City of Hoover under 42 U.S.C. § 1983, which "provides a federal remedy for the deprivation of rights, privileges, or immunities protected by the Constitution or the laws of the United States."  *Von Stein v. Brescher*, 904 F.2d 572, 578 (11th Cir. 1990).  As a government official, the doctrine of qualified immunity may shield Glover in his individual capacity from liability for civil damages arising out of plaintiff's allegations of Fourth Amendment violations.  If Glover did not violate plaintiff's constitutional rights, the City of Hoover is likewise absolved of liability.  *See Case v. Eslinger*, 555 F.3d 1317, 1328 (11th Cir. 2009)(city may not be held liable for officer's actions where he or she did not violate plaintiff's constitutional rights).

### 1. Glover

Glover contends that the § 1983 claims against him in his personal or individual capacity are due to be dismissed on the basis of qualified immunity.

> When government officials act in a way that knowingly violates a clearly established statutory or constitutional right of which a reasonable person would have known, they are not immune from suit and may be held liable for the damage their actions caused. *Harlow v. Fitzgerald*, 457 U.S. 800, 818-19 (1982). But when these same officials make decisions that do not knowingly violate such rights, they are not required to defend themselves in a lawsuit seeking damages. *Id.* They are "immune" from suit. *Id.* We call this defense "qualified immunity" because the official is immune from a damage lawsuit, qualified upon his ability to show that he did not knowingly violate the plaintiff's clearly established constitutional right. *Id.*

*Ray v. Foltz*, 370 F.3d 1079, 1081-82 (11th Cir. 2004). "Qualified immunity operates to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful." *Carr v. Tatangelo*, 338 F.3d 1259, 1266 (11th Cir. 2003)(quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)(quoting *Saucier v. Katz*, 533 U.S. 194, 206 (2001)))(internal citations and quotations omitted.).

The Eleventh Circuit uses a two-step analysis to determine whether a public official has qualified immunity: (1) the public official must establish that he was acting within the scope of his discretion; and (2), if the public official establishes that he was acting within his discretion, the plaintiff must show that the public official violated clearly established statutory or constitutional law. *Wood v. Kesler*, 323 F.3d 872, 877-78 (11th Cir. 2003); *Sims v. Metropolitan Dade County*, 972 F.2d 1230, 1236 (11th Cir. 1992). For purposes of the § 1983 claims, the parties do not dispute that Glover was acting within his discretion; therefore, the issue for the court is whether his actions violated clearly established constitutional law.

15

Whether Glover's actions violated clearly established constitutional law also "consists of a two-part inquiry." *Harris v. Coweta County, Ga.*, 433 F.3d 807, 812 (11th Cir. 2005)(citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

> First we ask, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" [*Saucier*, 533 U.S. at 201] If, assuming the plaintiff's allegations were true, no such right would have been violated, the analysis is complete. However, if a constitutional violation can be made out on the plaintiff's facts, we then must determine "whether, at the time of the incident, every objectively reasonable police officer would have realized the acts violated already clearly established federal law." *Garrett v. Athens-Clarke County*, 378 F.3d 1274, 1278-79 (11th Cir. 2004)(citing *Saucier*, 533 U.S. at 201-02).

*Id.*

"The threshold inquiry a court must undertake in a qualified immunity analysis is whether plaintiff's allegations, if true, establish a constitutional violation." *Hope*, 536 U.S. at 736.[5]  In a civil action brought pursuant to § 1983, the plaintiff bears the burden of demonstrating a constitutional violation. *Harris*, 433 F.3d at 811(citing *Lee v. Ferraro*, 284 F.3d 1188, 1193-94 (11th Cir. 2002)); *Kesler*, 323 F.3d at 877-78.

### a. Unlawful Seizure

"Under the Fourth Amendment, an individual has a right to be free from 'unreasonable searches and seizures[,]' and an arrest is a seizure of the person." *Case v. Eslinger*, 555 F.3d 1317, 1326 (11th Cir. 2009) (quoting *Skop v. City of Atlanta, Ga.* 485 F.3d 1130, 1137 (11th Cir. 2007)) (alterations omitted).  The existence of probable cause

---

[5]The Supreme Court has limited *Saucier's* mandate that a district court **must** decide the question of qualified immunity by deciding first if their has been a constitutional violation. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)("On reconsidering the procedure required in *Saucier*, we conclude that, while the sequence set forth there is often appropriate, it should no longer be regarded as mandatory.  The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.").

16

determines the reasonableness of an arrest under the Fourth Amendment. *Id*. "A warrantless arrest without probable cause violates the Constitution and provides a basis for a section 1983 claim, but the existence of probable cause at the time of arrest constitutes an absolute bar to a section 1983 action for false arrest." *Id*. at 1326-27 (quoting *Kingsland v. City of Miami*, 382 F.3d 1220, 1226 (11th Cir. 2004))(quotations and alteration omitted); s*ee also Von Stein v. Brescher*, 904 F.2d 572, 579 (11th Cir. 1990)("[A]n arrest without probable cause to believe a crime had been committed violate[s] the Fourth Amendment."). "Probable cause to arrest exists when law enforcement officials have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that the suspect had committed or was committing a crime." *Case*, 555 F.3d at 1327 (quoting *United States v. Gonzalez*, 969 F.2d 999, 1002 (11th Cir. 1992)); *see also Lee v. Ferraro*, 284 F.3d 1188, 1195 (11th Cir. 2002)(requiring that arrest be objectively reasonable based on the totality of the circumstances). "When the constitutional validity of an arrest is challenged, it is the function of the court to determine whether the facts available to the arresting officers at the moment of the arrest support a finding of probable cause." *United States v. Allison*, 953 F.2d 1346, 1350-51 (11th Cir. 1992).

The Arrest Report states that Ruffino was arrested for disorderly conduct in violation of Alabama Code § 13A-11-7(a)(3). Now, in support of their Motion for Summary Judgment and in opposition to Ruffino's Motion for Partial Summary Judgment, defendants contend that Glover had probable cause to arrest Ruffino not only for disorderly conduct in violation of Alabama Code § 13A-11-7-(a)(3), but also disorderly conduct in violation of Alabama Code § 13A-11-7(a)(1), harassment in violation of Alabama Code § 13A-11-8, assault in violation of Alabama Code § 13A-6-22, and obstruction of governmental operations in violation of Alabama Code § 13A-10-2. (*See* doc. 58-1 at 13 ["Based upon the

above-described circumstances, reasonable officers in the defendants' position could have easily believed that the plaintiff committed the crime of disorderly conduct.  Moreover, there was probable cause to arrest Mr. Ruffino for obstruction of governmental operations, assaulting an officer and/or harassment."]; doc. 62 at 22 ["pushing an officer is a crime (disorderly conduct and/or harassment)"]; doc. 64 at 5 ["a prudent person would believe that Ruffino [had] committed an offense of harassment or assault" because he put his hands on Glover].)[6]  The Supreme Court has held, "Our cases make clear that an arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause.  That is to say, his subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause."  *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004)(citing, *inter alia*, *Whren v. United States*, 517 U.S. 806, 812-813 (1996))(internal citations omitted).  Therefore, the court will consider whether Glover had probable cause to arrest Ruffino for any of these offenses.

### i. Disorderly Conduct

Defendants assert that Glover had probable cause to arrest plaintiff for disorderly conduct under Alabama Code § 13A-11-7(a)(1) or (3).  Ruffino contends that Glover did not have probable cause to arrest him for disorderly conduct because his conduct did not meet the elements of the crime.[7]  (Doc. 60 at 23-25.)  Alabama's disorderly conduct statute states:

---

[6]The court notes that the page numbers of parties' briefs in the court's electronic filing system do not coincide with the page number printed on the hard copy.  References herein are to the page numbers in the court's electronic filing system.

[7]Alternatively, plaintiff argues that disorderly conduct is a misdemeanor for which he may not be arrested without a warrant under Alabama law.  *See* Ala. Code § 15-10-3.  The Eleventh Circuit has rejected this argument.  *See Knight v. Jacobson*, 300 F.3d 1272, 1276 (11th Cir. 2002) ("Section 1983 does not create a remedy for every wrong committed under color of state law, but only for those that deprive a plaintiff of a federal right."); *see, e.g., Crosby v. Monroe County*, 394 F.3d 1328, 1333 (11th Cir. 2004).  An arrest which is supported by probable cause but is not permitted under state law does not violate the Fourth

> (a)  A person commits the crime of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:
>
> > (1)  Engages in fighting or in violent tumultuous or threatening behavior; or
> >
> > (2)  Makes unreasonable noise; or
> >
> > (3)  In a public place uses abusive or obscene language or makes an obscene gesture; or
> >
> > (4)  Without lawful authority, disturbs any lawful assembly or meeting of persons; or
> >
> > (5)  Obstructs vehicular or pedestrian traffic, or a transportation facility; or
> >
> > (6)  Congregates with other person in a public place and refuses to comply with a lawful order of the police to disperse.

Ala. Code 1975 § 13A-11-7(a).  Defendants contend that Glover had probable cause to arrest Ruffino for disorderly conduct under either subsection (1) or (3) based on the fact that Ruffino pushed Glover as he was trying to break-up the argument between Ruffino and Jonathan Lee.  (Doc. 62 at 19.)

The Alabama statute has an obvious "public" element – "A person commits the crime of disorderly conduct if, with intent to cause *public* inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he . . .  (1)  Engages in fighting or in violent tumultuous or threatening behavior; or . . .  (3) In a *public* place uses abusive or obscene language or makes an obscene gesture . . . ."  Ala. Code § 13A-11-7(a)(1), (a)(3).  "This statute is 'designed to protect the *public* from being annoyed, inconvenienced or alarmed.'  § 13A-11-7 Commentary.  The subsection . . . 'covers the sort of *public* activity that is traditionally within the common law concept of breach of the peace.'  § 13A-11-7 Commentary."  *Hardy*

---

Amendment.  *Knight*, 300 F.3d at 1276.

19

*v. State*, 455 So. 2d 265, 269 (Ala. Crim. App. 1984)(emphasis added).  "The phrase 'breach of the peace' has been . . . defined as any 'situation tending to disturb the ***public*** order.'" *Madden v. Deere Credit Services, Inc.*, 598 So. 2d 860, 865 (Ala. 1992)(quoting *Reno v. General Motors Acceptance Corp.*, 378 So. 2d 1103, 1105 (Ala. 1979))(emphasis added). "It is 'a disturbance of the ***public*** tranquility, by any act or conduct inciting to violence or tending to provoke or excite others to break the peace, or, as is sometimes said, it includes any violation of any law enacted to preserve peace and good order.'"  *Id*.  (quoting *City of Akron v. Mingo*, 160 N.E.2d 225, 226 (Ohio 1959)(emphasis added).  Under Alabama Code § 13A-11-1(2), the definition of a "public place" specifically excludes a private residence to which an individual has been invited.  Ala. Code § 13A-11-1(2).

Defendants argue that Glover had probable cause to arrest Ruffino because Ruffino pushed or shoved him.  They contend that "pushing an officer is a crime." (Doc. 62 at 22.) Also, they argue:

> Here, Officer Glover witnessed Mr. Ruffino and his soon to be ex-son-in-law in a shouting match.  As a sworn officer, Glover has a duty to protect the ***public*** and he immediately attempted to de-escalate the situation. He was then shoved by the plaintiff.  . . .
>
> Based upon the above-described circumstances, reasonable officers in the defendant[']s position could have easily believed that the plaintiff committed the crime of disorderly conduct.

(Doc. 58-1 at 13 [emphasis added].)   Indeed, when recounting the facts that supported Ruffino's arrest, defendants do not mention any ***public*** disturbance.

They contend, "The undisputed evidence establishes that (1) the officers were present during a fire investigation; (2) the plaintiff was yelling during an argument ***inside the house*** (fire scene); and (3) profanity was used during the argument."  (Doc. 64 at 6-7 [emphasis added].)  However, the fire scene was outside the house and no officers were inside the house

20

investigating the fire.  Defendants have not made any showing, either in support of their Motion for Summary Judgment or in opposition to Ruffino's Motion for Partial Summary Judgment, that the argument between Ruffino and Jonathan Lee constituted a public disturbance or threatened to disturb the public.[8]  Without such a showing, Glover had no probable cause to arrest Ruffino for disorderly conduct under either subsection (a)(1) or subsection (a)(3).

The court finds as a matter of law that "son of a bitch" is not an obscenity or profanity sufficient to support a charge of disorderly conduct under § 13A-11-7(a)(3).  Although defendants presented evidence that Glover and other officers heard Ruffino call his son-in-law a "son of a bitch," defendants do not argue that such epithet is "fighting words" as required under § 13A-11-7(a)(3).

> Historically, [the Alabama Court of Criminal Appeals] has held that the "abusive or obscene language" provision of Alabama's disorderly conduct and harassment statutes was limited to "fighting words." *See, e.g.*, *Conkle v. State*, 677 So. 2d 1211 (Ala. Crim. App. 1995); *R.I.T. v. State*, 675 So. 2d 97 (Ala. Crim. App. 1995); *B.E.S. v. State*, 629 So. 2d 761 (Ala. Crim. App. 1993); *Robinson v. State*, 615 So. 2d 112 (Ala. Crim. App. 1992).  "[Fighting words]

---

[8]Defendants, without discussion, cite the court to *Rose v. Town of Jackson's Gap*. 952 F. Supp. 757, 764 (M.D. Ala. 1996), presumably for the proposition that disorderly conduct can occur on private property.  (*See* doc. 58-1 at 12-13.)  However, the *Rose* decision is distinguishable from the facts of this case as the plaintiff's alleged disorderly conduct in *Rose* occurred **outside** the house, and, therefore, in public.  *Rose*, 952 F. Supp. at 764; *see also Ivey v. State*,710 So. 2d 946, 947 (Ala. Crim. App. 1998)(yelling abusive language at next door neighbor, language heard by neighbors guests at child's birthday party); *Smith v. City of Anniston*, 668 So. 2d 96, 98 (Ala. Crim. App. 1995)(offensive comment made "in the presence of other individuals who could hear and react"); *see also United States v. Coutchavlis*, 260 F.3d 1149, 1154 (9th Cir. 2001)("[T]he issue is not whether the public actually witnessed the act, but rather whether the act took place in a location accessible to the public.").  "The sanctity of the home is afforded special protection under the Fourth Amendment, such that the reasons for upholding warrantless arrests in a public place do not apply to warrantless invasions of the privacy of the home.  Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant." *Harris v. City of Prattville*, Civil Action No. 2:07-CV-349-WHA, 2008 WL 2704684, *13 (M.D. Ala. July 7, 2008)(quoting *Bashir v. Rockdale County*, 445 F.3d 1323, 1327-28 (11th Cir. 2006))(internal quotations and other citations omitted).

21

by their very utterance provoke a swift physical retaliation and incite an immediate breach of the peace." *Skelton v. City of Birmingham*, 342 So. 2d 933, 936-37 (Ala. Crim. App.), *remanded on other grounds*, 342 So. 2d 937 (Ala. 1976). "'***The test is what men of common intelligence would understand would be words likely to cause an average addressee to fight***.'" *Chaplinsky v. New Hampshire*, 315 U.S. 568, 573, 62 S. Ct. 766, 86 L. Ed. 1031 (1942), *quoting State v. Chaplinsky*, 91 N.H. 310, 320, 18 A.2d 754, 762 (1941). The words "'must be sufficiently offensive to raise a probability of physical retaliation by the addressee or someone acting in his interest.'" *B.E.S.*, 629 So. 2d at 765, *quoting* A.L.I. Model Penal Code § 250.4 at 365-66 (1980).

*Fallin v. City of Huntsville*, 865 So. 2d 473, 475 (Ala. Crim. App. 2003)(emphasis added). The court finds, as a matter of law, that "son of a bitch" is not so offensive as to "provoke a swift physical retaliation" or cause Jonathan Lee to fight.

The court finds defendants had no probable cause to arrest Ruffino for disorderly conduct in violation of subsection (a)(3) based on a lack of evidence that the fight between Ruffino and Jonathan Lee was in a "public" place or that Ruffino used abusive or obscene language.

Defendants contend that Glover had probable cause to arrest Ruffino for violating subsection (a)(1) of the disorderly-conduct statute. Subsection (a)(1) states, "A person commits the crime of disorderly conduct if, with intent to cause ***public*** inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he . . . [e]ngages in ***fighting*** or in ***violent tumultuous or threatening behavior***." Ala. Code § 13A-11-7(a)(1) (emphasis added). Defendants rely on the fact that Ruffino shoved or pushed Glover to support their claim that probable cause to arrest Ruffino for disorderly conduct under subsection (a)(1). However, this single physical touch – whether a shove or a push – cannot be said to be fighting or tumultuous behavior pursuant to 13A-7-11(a)(1). Also, although a shove or push could qualify as violent or threatening behavior under certain circumstances, Glover's

testimony establishes that Ruffino's push or shove was not violent or threatening. (See doc. 57-3 at 137-38.)

As set forth above, defendants have made no attempt to show that Ruffino pushed Glover with the intent to cause public inconveince, annoyance, and/or harm. Ruffino was having an argument with his son-in-law when the officers investigating a fire outside the house heard indiscriminate loud voices and yelling and entered the house. Glover stepped between them and Ruffino pushed or shoved him back. This conduct does not provide probable cause to arrest Ruffino for disorderly conduct under either subsection (a)(1) or (a)(3).

### ii. Assault

Under Alabama law –

A person commits the crime of assault in the third degree if:

> (1) With intent to cause physical injury to another person, he causes physical injury to any person, or
>
> (2) He recklessly causes physical injury to another person, or
>
> (3) With criminal negligence he causes physical injury to another person by means of a deadly weapon or a dangerous instrument, or
>
> (4) With intent to prevent a peace officer from performing a lawful duty, he causes physical injury to any person.

Ala. Code § 13A-6-22. Under this code section, no assault can occur without "physical injury." *Id*. Alabama law defines "Physical injury" as "Impairment of physical condition or substantial pain." Ala. Code 1975 § 13A-1-2(12). The evidence is undisputed that Ruffino did not cause Glover "physical injury," as defined by Alabama law, when he pushed him. Eichhorn, who participated in the arrest, testified that he did not believe that plaintiff assaulted Glover. (Doc. 57-5, Ex. D, at 82-85.) Glover, himself, testified that the pushing

was disorderly conduct or noncompliant conduct, but it was not a criminal assault.  (Doc. 57-3, Ex. B, at 54-56, 140-41.)

The court finds no probable cause to arrest Ruffino for assault.

### iii.  Obstruction of Governmental Operations

In Alabama, "[a] person commits the crime of obstructing governmental operations if, by means of intimidation, physical force or interference or by any other independently unlawful act, he: (1) Intentionally obstructs, impairs or hinders the administration of law or other governmental function; or (2) Intentionally prevents a public servant from performing a governmental function."  Ala. Code § 13A-10-2.  Nothing in the facts supports a finding that defendants had reason to believe that Ruffino was intimidating or using physical force or intimidation to hinder or prevent the investigation of the fire.

The undisputed facts show that Ruffino was arguing with his son-in-law, inside the house and away from the officers investigating the fire.  Glover approached Ruffino, not as part of his investigation or to prevent Ruffino from obstructing the investigation, but to stop the argument between Ruffino and Jonathan Lee.

"The court recognizes that when officers forcibly try to resolve disputes, while not engaged in the lawful discharge of their official duties, they lack probable cause to arrest for obstruction of their unauthorized actions."  *Houston v. Tucker*, 137 F. Supp. 2d 1326, 1337 (N.D. Ga. 2000)(citing *Thornton v. City of Macon*, 132 F.3d 1395 (11th Cir. 1998)).  The record reveals no evidence, and defendants have not argued any facts, that would support a finding that Ruffino's conduct – arguing with Jonathan Lee and pushing Glover when he tried to break up the argument – either "[i]ntentionally obstruct[ed], impair[ed] or hinder[ed] the administration of law or other governmental function;" or that he "[i]ntentionally prevent[ed] a public servant from performing a governmental function."

24

The court finds no evidence of probable cause to arrest Ruffino for obstruction of governmental operations.

### iv. Harassment

Defendants argue that Glover had probable cause to arrest plaintiff for harassment. Section 13A-11-8 of the Alabama Code defines the offense of "harassment" as –

> A person commits the crime of harassment if, ***with intent to harass, annoy, or alarm another person***, he or she either:
>
> > a. Strikes, shoves, kicks, or otherwise touches a person or subjects him or her to physical contact.
> >
> > b. Directs abusive or obscene language or makes an obscene gesture towards another person.
>
> (2) For purposes of this section, harassment shall include a threat, verbal or nonverbal, made with the intent to carry out the threat, that would cause a reasonable person who is the target of the threat to fear for his or her safety.

Ala. Code § 13A-11-8(a). Nothing in the facts recounted by defendants indicates what facts led Glover to believe that Ruffino "intended to harass, annoy, or alarm" him. Indeed, the parties agree that Ruffino pushed or touched Glover when Glover stepped between Ruffino and his son-in-law during their argument and stood very close to Ruffino. The reflexive nature of Ruffino's conduct cannot be said to be evidence of a purposeful act intented to harass, annoy, or alarm Glover. Defendants do not argue or present any other evidence of Ruffino's harassing intent or effect.

Therefore, the court finds no probable cause to arrest Ruffino for harassment in violation of Ala. Code § 13A-11-8(a)(1).

To the extent defendants rely upon subsection (a)(2), the court find no probable cause to arrest Ruffino. The only allegation of obscene or abusive language is Ruffino calling his son-in-law a "son of a bitch." As set forth above, the epithet is not abusive or obscene

because it is not "fighting words."  The record lacks any indication that Ruffino directed abusive or obscene language or an obscene gesture to Glover.

Therefore, the court finds that the record lacks evidence that Glover had probable cause to arrest plaintiff for harassment under either subsection (a)(1) or (a)(2) of Ala. Code § 13A-11-8.

Based on the foregoing, the court finds Glover did not have probable cause to arrest Ruffino for disorderly conduct, the offense with which Ruffino was charged, or any other offense enumerated in defendants' arguments in support of their Motion for Summary Judgment or in opposition to Ruffino's Motion for Partial Summary Judgment.  The court finds that Glover violated Ruffino's right to be free from unreasonable seizure.  Therefore, the court will turn to the issue of whether the law was clearly established at the time of Ruffino's arrest such that Glover had clear warning that the arrest violated Ruffino's Fourth Amendment rights.  *See McClish v. Nugent*, 483 F.3d 1231, 1248 (11th Cir. 2007)(citing *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)).

### b.  Clearly Established Law

The law is well established that "[a] warrantless arrest without probable cause violates the Constitution and provides a basis for a section 1983 claim."  *Kingsland v. City of Miami*, 382 F.3d 1220, 1226 (11th Cir. 2004)(citing *Marx v. Gumbinner*, 905 F.2d 1503, 1505 (11th Cir. 1990)).  However –

> While an officer who arrests an individual without probable cause violates the Fourth Amendment, this does not inevitably remove the shield of qualified immunity.  We do not automatically hold an officer liable for making an arrest that, when seen with the benefit of hindsight, turns out not to have been supported by probable cause.  . . .  Thus, even if we determine that the officer did not in fact have probable cause, we apply the standard of "***arguable probable cause***," that is, ***whether "reasonable officers in the same circumstances and possessing the same knowledge as the Defendant[ ] could have believed that probable cause existed to arrest***."  *Lee v. Ferraro*, 284 F.3d 1188, 1195 (11th Cir.2002)(. . . quotation marks omitted).  Indeed, ***this is "all***

> ***that is required for qualified immunity to be applicable to an arresting officer***." *Scarbrough v. Myles*, 245 F.3d 1299, 1302 (11th Cir.2001) (per curiam).  This standard recognizes that law enforcement officers may make reasonable but mistaken judgments regarding probable cause but ***does not shield officers who unreasonably conclude that probable cause exists***.

*Skop v. City of Atlanta*, 485 F.3d 1130, 1137 (11th Cir. 2007)(original emphasis deleted; emphasis added).  "The standard is an objective one and does not include an inquiry in to the officer's subjective intent or beliefs." *Brown v. City of Huntsville*, 608 F.3d 724, 734-35 (11th Cir. 2010).  "Whether a particular set of facts gives rise to probable cause or arguable probable cause to justify an arrest for a particular crime depends . . . on the elements of the crime." *Crosby v. Monroe County*, 394 F.3d 1328, 1333 (11th Cir. 2004).

Defendants have not presented any evidence or argument identifying the facts that would lead a reasonable officer to believe that Ruffino had committed an offense given the elements of the offenses.  Defendants argue only that Ruffino called his son-in-law a "son of a bitch" and that he pushed or shoved Glover.  For example, defendants contend:

> Here, Officer Glover, witnessed Mr. Ruffino and his soon to be ex-son-in-law in a shouting match.  As a sworn officer, Glover has a duty to protect the public and he immediately attempted to de-escalate the situation.  He was then shoved by the plaintiff.  . . .
>
> Based upon the above-described circumstances, reasonable officers in the defendants position could have easily believed that the plaintiff committed the crime of disorderly conduct.  Moreover, there was probable cause to arrest Mr. Ruffino for obstruction of governmental operations, assaulting an officer and/or harassment.  Thus, the totality of the circumstances gave rise to probable cause or at least arguable probable cause for the plaintiff's arrest.

(Doc. 58-1 at 13.)  The opposition to plaintiff's Motion for Partial Summary Judgment is also vague and  conclusory.  (*See* doc. 62 at 19-20.)  Defendants argue:

> Assuming arguendo, the defendants did not have probable cause for a disorderly conduct, Ala. Code § 13A-11-7(a)(3) arrest, the defendants had probable cause for a disorderly conduct arrest under Ala. Code § 13A-11-7(a)(1) ("A person commits the crime of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he: (1) engages in fighting or in violent tumultuous or

> threatening behavior.") and/or an arrest for harassment under Ala. Code §
> 13A-11-8(a)(1) ("A person commits the crime of harassment if, with intent to
> harass, annoy, or alarm another person he or she either: a. strikes, shoves,
> kicks, or otherwise touches a person or subjects him or her to physical
> contact."). Clearly Mr. Ruffino's actions, taken in the light most favorable to
> the defendants, would meet the elements of either of these crimes.

(Doc. 62 at 19-20.)  Merely saying the record "clearly" shows probable cause does not make

it so.

In their Reply Brief, defendants offer some detail, but they do not specifically address

the obvious discrepancies between the circumstances and the charged offense or the offenses

noted by defendants in their arguments.  (Doc. 64 at 4/3-5/4.)  They argue:

> Here, Sgt. Glover of the Hoover Crime Scene Unit heard male voices
> yelling and using profanity inside the house.  He went inside and found
> Ruffino and Lee still yelling and standing in close proximity to each other.
> Deposition of Rod Glover, Doc. 58-15 at 135-136.  Glover told both men to
> calm and leave.  Mr. Lee immediately complied; however, Mr. Ruffino did
> not.  Doc. 58-15 at 137-138.  The plaintiff acknowledges that he put his hands
> on Sgt. Glover after Glover stepped between [him] and Mr. Lee.  Doc. 60 at
> [17], ¶ 4.  In light of this information, a prudent person would believe that
> Ruffino has committed an offense of harassment or assault.
>
> Under these circumstances, Officer Glover had probable cause to arrest
> Ruffino for harassment under Ala. Code § 13A-11-8(a)(1) ("A person commits
> the crime of harassment if, with intent to harass, annoy, or alarm another
> person he or she either:  a. strikes, shoves, kicks, or otherwise touches a person
> or subjects him or her to physical contact.").  Thus, Sgt. Glover is entitled to
> qualified immunity and summary judgment in his favor for no genuine issues
> of material fact exists regarding the plaintiff's unlawful seizure or false arrest
> claim.

(*Id.*)  Although acknowledging that a specific intent is needed to establish harassment,

defendants do not specify any facts that would lead a reasonable officer to believe that

Ruffino pushed Glover with the intent to harass, annoy, or alarm him.

Defendants' discussions of probable cause do not mention the "public" component

of a disorderly-conduct charge.  They do not explain how the conduct constituted obstruction

of government affairs, given Glover entered the house to squelch an argument over marital

property between a father and son-in-law and not as part of his official duties – inspecting the cause of the fire outside the house.  They do not explain how Ruffino assaulted Glover, given the fact that Glover suffered no physical injury.

As set forth above, the facts, viewed in the light most favorable to Ruffino, do not establish arguable probable cause to arrest Ruffino inside his daughter's house.  Defendants have not pointed the court to any fact or circumstance that might cause a reasonable officer to believe that Ruffino's conduct was unlawful.  Indeed, based on the facts before the court, the clear statutory language of each offense assserted by defendants negates any arguable probable cause based on the facts and circumstances.  Therefore, Glover is not entitled to qualified immunity as to the § 1983/unlawful arrest claim.

Also, viewing the evidence in the light most favorable to defendants, the court finds Glover had no arguable probable cause to arrest Ruffino for disorderly conduct or any of the uncharged crimes asserted herein.  Therefore, the court finds that Ruffino is entitled to judgment as a matter of law as to his § 1983/unlawful arrest claim against defendant Glover in his individual capacity.

For the foregoing reasons, defendants' Motion for Summary Judgment was denied and plaintiff's Motion for Partial Summary Judgment was granted as to plaintiff's § 1983/unlawful arrest claim against Glover in his individual capacity.  (*See* doc. 73 ¶ 2.)

### c.  Malicious Prosecution

The Eleventh Circuit "has identified malicious prosecution as a violation of the Fourth Amendment and a viable constitutional tort cognizable under § 1983."  *Skop*, 485 F.3d at 1144 (quoting *Wood v. Kesler*, 323 F.3d 872, 881 (11th Cir. 2003)).   "To establish a federal malicious prosecution claim under § 1983, the plaintiff must prove a violation of his Fourth Amendment right to be free from unreasonable seizures in addition to the elements of the

29

common law tort of malicious prosecution." *Wood*, 323 F.3d 872, 881 (11th Cir. 2003).  As set forth above, Ruffino has proven a violation of his Fourth Amendment right to be free from an unreasonable seizure.  Therefore, the court turns to the elements of a common-law tort of malicious prosecution.

The Eleventh Circuit has held that "the constituent elements of the common law tort of malicious prosecution included:  (1) a criminal prosecution instituted or continued by the present defendant; (2) with malice ***and*** without probable cause; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused."  *Id*. at 881-82 (citing *Uboh v. Reno*, 141 F.3d 1000, 1004 (11th Cir. 1998) and *Delchamps, Inc. v. Bryant*, 738 So. 2d 824, 831-32 (Ala. 1999))(emphasis added).  "[A]lthough both state law and federal law help inform the elements of the common law tort of malicious prosecution, a Fourth Amendment malicious prosecution claim under § 1983 remains a federal constitutional claim, and its elements and whether they are met ultimately are controlled by federal law."  *Id*. at 882.

Defendants argue that Ruffino cannot prove the first two of the elements – (1) that Glover initiated the criminal proceedings against Ruffino and (2) that he did so without probable cause and with malice.  (*See* doc. 62 at 15-16.)

### i.  Initiation of Proceedings

The parties do not dispute that Glover filed a Complaint alleging disorderly conduct against Ruffino on November 3, 2006.  (*See* doc. 57-11, Ex. O, at 14.)  Defendants contend that this conduct is not sufficient to establish that Glover initiated the criminal proceedings.  "In many cases, arresting officers will not be responsible for the continuation of the prosecution because the prosecutor (or some other factor) will break the causal link between defendants' conduct and plaintiff's injury."  *Whiting v. Traylor*, 85 F.3d 581, 586 n.10 (11th

30

Cir. 1996)(citing, *inter alia*, *Eubanks v. Gerwen*, 40 F.3d 1157, 1160-61 (11th Cir. 1994));

*also Williams v. Miami-Dade Police Dept.*, 297 Fed. Appx. 941, 947 (11th Cir. 2008); *see*

*also Reed v. City of Chicago*, 77 F.3d 1049, 1053 (7th Cir. 1996)("[T]he State's Attorney,

not the police, prosecutes a criminal action.  It is conceivable that a wrongful arrest could be

the first step towards a malicious prosecution.    However, the chain of causation is broken

by an indictment, absent an allegation of pressure or influence exerted by the police officers,

or knowing misstatements made by the officers to the prosecutor.")(citations omitted).

> "[Where] a defendant merely gives the district attorney's office information
> regarding an alleged crime, leaving the decision to prosecute entirely to the
> uncontrolled discretion of the district attorney, who thereafter makes his own
> independent investigation and thereupon takes the information before the
> grand jury which returns indictments against the suspects, the defendant, in a
> malicious prosecution action, is not regarded as having instigated the criminal
> proceeding.

*Ritch v. Waldrop*, 428 So. 2d 1, 3 (Ala. 1982)(quoting *Alabama Power Co. v. Neighbors*, 402

So. 2d 958, 962 (Ala. 1981)), *quoted in Cutts v. American United Life Ins. Co.*, 505 So. 2d

1211, 1215 (Ala. 1987).

"The exception to this rule is when the officer fraudulently misrepresents the

information with the intention of inducing criminal proceedings that otherwise have no

merit." *See McCray v. City of Dothan*, 169 F. Supp. 2d 1260, 1293 (M.D. Ala. 2001)(citing

*Alabama Power Co.*, 402 So. 2d at 964)(emphasis added), *aff'd in part and rev'd in part*

*without opinion* 67 Fed. Appx. 582 (11th Cir. 2003); *see also Grider v. City of Auburn*, 618

F.3d 1240, 1258 (11th Cir. 2010)(denying police officer's Motion for Summary Judgment

based on evidence that the officer "wholly fabricated the [criminal] charge against

[plaintiff].").

Ruffino contends that the Complaint Glover prepared caused the initiation of criminal

proceedings, and the Complaint was "both legally insufficient and contained false allegations

31

as to the plaintiff's alleged use of abusive language and his alleged presence in a 'public' place." (*See* doc. 60 at 33.)  The Complaint states that, "in a public place," "[Ruffino] became loud and boisterous and interfered with an arson investigation.  After being warned to calm down and move out of the area the defendant pushed Sgt. Rod Glover.  The defendant was using abusive and obscene language toward the victim of the fire." (Doc. 57-11, Ex. O, at 14.)

Defendants contend that Glover is entitled to summary judgment because Ruffino presented no evidence that the City Attorney relied upon a "false allegation," or that Glover testified against Ruffino in any court proceeding.  This court disagrees.

The evidence is undisputed that the charges against Ruffino were based solely on Glover's Complaint.  Nothing in the record indicates that any other evidence was considered by the City Attorney in deciding to prosecute Ruffino.   Viewing the facts in the light most favorable to Ruffino, there is no factual support for Glover's claim that Ruffino interfered with the fire investigation and that Ruffino had pushed Glover.   Moreover, the Complaint omits any indication of the abusive or obscene words spoken by Ruffino and the fact that the "loud and boisterous" behavior did not occur "in a public place" – facts that are essential to a finding of disorderly conduct.  For purposes of deciding defendants' Motion for Summary Judgment, the court finds that this evidence is sufficient to present a question of fact as to whether Glover instigated the criminal proceedings. *See Grider*, 618 F.3d at 1258; *McCray*, 169 F. Supp. 2d at 1293.

### ii.  Without Probable Cause

Pursuant to Alabama law, "a conviction for the offense charged, even though subsequently reversed, is prima facie evidence of the existence of probable cause." *Nesmith v. Alford*, 318 F.2d 110, 122 (5th Cir. 1963).  This prima facie case "may be rebutted by any

competent evidence which clearly overcomes the presumption arising from the fact of defendant's conviction in the first instance." *Id*. at 123 (internal citation and quotations omitted).

Although Ruffino was convicted in the Hoover Municipal Court, the court finds any presumption of a prima facie case of probable cause is rebutted as a matter of law.  Even viewing the evidence in the light most favorable to defendants, the court finds the criminal prosecution for disorderly conduct in violation of Ala. Code § 13A-11-7(a)(3) was instigated without probable cause.

### iii. With Malice

Defendants also argue that plaintiff cannot prove Glover acted with malice.  To establish a cause of action for malicious prosecution under federal law, Ruffino must show that Glover instigated the criminal proceedings with malice.  "[A] plaintiff who alleges only that he was arrested and detained without probable cause has only pled false arrest." *Sneed v. Rybicki*, 146 F.3d 478, 481 (7th Cir. 1998).  "Malice may be inferred from the want of probable cause, or from defendant's conduct, where such conduct will admit of no other reasonable construction." *Willis v. Parker*, 814 So. 2d 857, 863-64 (Ala. 2001)(quoting *Dillon v. Nix*, 318 So. 2d 308, 310 (Ala. Civ. App. 1975).  "When probable cause exists, proof of the highest degree of malice gains the plaintiff nothing.  Yet, when probable cause is shown to be lacking, malice is essential to recovery." *Delchamps, Inc. v. Bryant*, 738 So. 2d 824, 832 (Ala. 1999)(internal citation omitted).

The court finds a disputed issue of fact regarding whether Ruffino has shown  that Glover acted with malice.  Therefore, the Motions for Summary Judgment were denied as to Ruffino's § 1983/malicious prosecution claim against Glover.

### d. Excessive Force

"The Fourth Amendment's freedom from unreasonable searches and seizures encompasses the right to be free from excessive force during the course of a criminal apprehension." *Oliver v. Fiorino*, 586 F.3d 898, 905 (11th Cir. 2009)(citing *Graham v. Connor*, 490 U.S. 386, 394 (1989)). The right to arrest an individual carries with it the right to "use some degree of physical coercion or threat thereof to effect it." *Crenshaw v. Lister*, 556 F.3d 1286, 1290 (11th Cir. 2009)(quoting *Graham*, 490 U.S. at 396). The Eleventh Circuit has stated that a "typical arrest involves some force and injury." *Id*. (citing *Nolin v. Isbell*, 207 F.3d 1253, 1257-58 (11th Cir. 2000)).

In determining whether an officer's use of force is excessive, "[t]he question is whether the officer's conduct is objectively reasonable in light of the facts confronting the officer." *Vinyard v. Wilson*, 311 F.3d 1340, 1347 (11th Cir. 2002)(citing *Graham*, 490 U.S. at 394). The reasonableness of the use of force is measured objectively – that is, the use of force is "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham,* 490 U.S. at 397; *Crenshaw*, 556 F.3d at 1290.

Ruffino alleges that Glover used unwarranted force that resulted in severe injury.[9] (Doc. 60 at 27.)  An evaluation of the reasonableness of an officer's use of force requires the court to balance the nature and quality of the intrusion and countervailing government interests.  *Crenshaw*, 556 F.3d at 1290 (citing *Graham,* 490 U.S. at 396).  The court should consider: "(1) the need for the application of force, (2) the relationship between the need and the amount of force used, [and] (3) the extent of the injury inflicted."  *Id.* (citing *Hadley*, 526 F.3d at 1329-30).  When considering the need for the use of force, the court should pay "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  *Id.*  (quoting *Graham*, 490 U.S. at 396).

Viewing the facts in the light most favorable to Ruffino, the court finds Glover's use of force was objectively unreasonable.  Glover arrested Ruffino for a misdemeanor offense.

---

[9]Plaintiff also contends that, because his arrest was effected without either probable cause or arguable probable cause, any use of force is per se unconstitutional. However, a claim that the officer used excessive force is analyzed independently of a claim that the arrest was unlawful.  *Lee v. Ferraro*, 284 F.3d 1188, 1198 (11th Cir. 2002) (citing *Jackson v. Sauls*, 206 F.3d 1156, 1171 (11th Cir. 2000)).  The Eleventh Circuit has distinguished between an excessive force claim that is predicated solely on the unlawfulness of the arrest and an excessive force claim based upon allegations that quantify the force used to effect the arrest.  *See Bashir v. Rockdale County, Ga.*, 445 F.3d 1323, 1331-32 (11th Cir. 2006) (reversing summary judgment in favor of defendant officer on charge of unlawful arrest, but refusing to recognize, as a separate, recoverable offense, plaintiff's claim of excessive force based solely on the unlawfulness of the arrest).  "A genuine 'excessive force' claim relates to the manner in which an arrest was carried out, independent of whether law enforcement had the power to arrest."  *Hadley v. Gutierrez*, 526 F.3d 1324, 1329 (11th Cir. 2008) (citing *Bashir* , 445 F.3d at 1332 ("Under this Circuit's law, a claim that any force in an illegal stop or arrest is excessive is subsumed in the illegal stop or arrest claim and is not a discrete excessive force claim.")(quotation and alterations omitted)).  Thus plaintiff's argument – that a lack of probable cause made any use of force excessive – does not support his excessive force claim.  *See Bashir*, 445 F.3d at 1332.

Ruffino is an elderly man; nothing in the record shows he posed a threat to the safety of the officers or any one else on the scene.  Once on the ground, Ruffino did not resist.  Nevertheless, Glover sat on him for three to four minutes, despite Ruffino's complaints of pain.  Glover cuffed Ruffino with his hands behind his back and Ruffino suffered a complete tear of his left rotator cuff as a result of the actions taken by Glover.[10]  As a result of his injury, Ruffino had two surgeries to repair the tear and months of physical therapy.  Based on these facts, the court finds a reasonable jury could find the situation did not call for the use of the amount of force used by Glover.

Also, the Eleventh Circuit has held, "[W]e have no difficulty finding that by September 2003, previous case law clearly established that officers may not use excessive force against a non-resisting suspect who has already been subdued."  *Reese v. Herbert*, 527 F.3d 1253, 1274 n.33 (11th Cir. 2008)(citing *Hadley v. Gutierrez*, No. 06-12605, 2008 WL 1947008, at *7 (11th Cir. May 6, 2008)).  Therefore, viewing the facts in the light most favorable to Ruffino, the court finds Glover is not entitled to qualified immunity as to Ruffino's excessive force claim.

However, viewing the facts in the light most favorable to defendants, the evidence shows that Ruffino is not entitled to judgment as a matter of law on his excessive force claim

---

[10]The parties do not argue, but the court notes that a question of fact exists as to whether Glover's use of force caused Ruffino's injury.  Ruffino argues, "It is undisputed that the ***defendants*** used unwanted physical force upon Ruffino, resulting in severe injury to his left shoulder which required two subsequent surgeries to alleviate.  And, for the reasons as already set forth above, Plaintiff has presented sufficient evidence that excessive or illegal force was used by the ***defendant*** in arresting him, such that the defendants are not entitled to discretionary function immunity as to his claim of assault and battery."  (Doc. 56 at 28.)  However, the evidence shows that Eichhorn grabbed plaintiff's left arm and pulled it behind his back to take Ruffino down.  Thereafter, according to plaintiff, Glover sat on him holding his left arm in this position.  The record is not clear when Ruffino's shoulder was injured, but a reasonable jury could find that Eichhorn or another officer, and not Glover, caused the injury to Ruffino's shoulder.

either.  A reasonable jury could find Ruffino refused to get on the ground and was combative and agitated, he was handcuffed according to standard procedures, and Glover did not sit on him.  Under these facts, a reasonable fact finder could determine that the amount of force Glover used on Ruffino was not excessive.

Therefore, plaintiff's Motion for Summary Judgment as to his § 1983/excessive force claim will be denied.

### 2.  The City

The Supreme Court has strictly limited a municipality's liability under § 1983.  *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998) (citing *Monell v. Dept. of Social Servs.*, 436 U.S. 658, 694 (1978)).  Municipal liability will not lie, under § 1983, on a *respondeat superior* theory of liability.  *Monell*, 436 U.S. at 691.  "A city may only be held liable under 42 U.S.C. § 1983 when the injury caused was a result of municipal policy or custom."  *Lewis v. City of West Palm Beach, Fla.*, 561 F.3d 1288, 1293 (11th Cir. 2009).

> Municipal policy or custom may include a failure to provide adequate training if the deficiency "evidences a deliberate indifference to the rights of its inhabitants."  [*City of Canton v. Harris*, 489 U.S. 378,] 388 [(1989)].  To establish a city's deliberate indifference, "a plaintiff must present some evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action."  *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998).  A city may be put on notice in two ways.  First, if the city is aware that a pattern of constitutional violations exists, and nevertheless fails to provide adequate training, it is considered to be deliberately indifferent.  *Id*. at 1351.  Alternatively, deliberate indifference may be proven without evidence of prior incidents, if the likelihood for constitutional violation is so high that the need for training would be obvious.  *Id*. at 1351-52.

*Lewis*, 561 F.3d at 1293.

Ruffino contends:

> The plaintiff also has submitted sufficient evidence of a persistent failure to take disciplinary action on the part of the City of Hoover, Alabama, in connection with the unlawful actions taken against him.  Despite being put on repeat notice of Ruffino's complaints and being given multiple

opportunities to address and correct the situation regarding his criminal prosecution, the City fail to investigate this particular incident and take any remedial or corrective action.

The City's failure to effectively and consistently train its officers with regard to legal elements of crimes and arrest procedures also was a custom and policy causing the constitutional violation. It is undisputed that the City's officers only receive such training when they attend the state police academy and during a one-time initial hire training period. Thus, a reasonable jury could believe that the City failed to train its officers on Fourth Amendment issues. Because the need for training police on Fourth Amendment issues is "patently obvious," and because the plaintiff has submitted evidence of Fourth Amendment complaints against the City, a reasonable jury could hold the City liable for these violations.

(Doc. 56 at 29-30.)

The court notes that failure to investigate Ruffino's allegations of wrongdoing by Glover and/or to dismiss the Complaint against him do not prove a "custom or policy" of the City *caused* his injuries. "[I]n *Monell* and subsequent cases, [the Supreme Court has] required a plaintiff seeking to impose liability on a municipality under § 1983 to identify a municipal 'policy' or 'custom' that *caused* the plaintiff's injury." *Board of County Commissioners of Bryan County v. Brown*, 520 U.S. 397, 403 (1997)(citing *City of Canton v. Harris*, 489 U.S. 378, 389 (1989); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-81 (1986); *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 694 (1978)). "Thus, [the court's] first inquiry in any case alleging municipal liability under § 1983 is the question whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton*, 489 U.S. at 385.

Clearly, no causal link exists between Ruffino's injuries resulting from Glover's actions during his arrest and the swearing out of the Complaint and the City's conduct *after* his arrest.

Ruffino has submitted no evidence that the City had notice of a need to train its officers based on prior widespread violations of constitutional rights. He is wrong in his

assertion that "the persistent failure on the part of the City to take disciplinary action," or to conduct further investigation with respect to his ongoing prosecution, is evidence of a pattern of conscious disregard by the City as contemplated by the Eleventh Circuit in *Gold*. (*See* doc. 56 at 29-30.)

Plaintiff, alternatively, asserts that the City had notice of a need to train because its failure to train its officer on the elements of criminal offenses and the proper procedure for handcuffing was obvious. In *City of Canton v. Harris*, "the Supreme Court in dictum left open the possibility that the need to train could be so 'obvious' resulting in a city's being liable without a pattern of prior constitutional violations." *Gold*, 151 F.3d at 1352 (citing *City of Canton v. Harris*, 489 U.S. 378 (1989) (referencing, as an example, the need to train officers on the constitutional limitations on the use of deadly force, when providing them with firearms)). In *Board of County Commissioners v. Brown*, the Supreme Court described the "obvious" exception, as "a narrow range of circumstances [in which] a violation of federal rights may be a highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations." The court finds that arresting individuals in private places for disorderly conduct and officers' failure to use proper handcuffing techniques are not such "obvious" situations in which a City can be liable for its failure to train its officers without notice of prior incidents.

Accordingly, the court finds that Ruffino has not submitted sufficient evidence from which a reasonable jury could find that his injuries were cause by a policy or custom of the City. Therefore, defendants' Motion for Summary was granted and Ruffino's Motion for Partial Summary Judgment was denied as to his § 1983/unlawful seizure and malicious prosecution claims against the City and those claims were dismissed. (Doc. 78 ¶¶ 1-3.)

### 3.  Deliberate Indifference to Medical Needs

In his Brief in Response to Defendants' Motion for Summary Judgment, Ruffino states that he is withdrawing his claim of deliberate indifference as to serious medical needs. (Doc. 60 at 21 n.6.)  Therefore, defendants' Motion for Summary as to plaintiff's claim of deliberate indifference was granted and this claim was dismissed.

## B.  State Law Claims

### 1.  Glover

Glover asserts that he is entitled to judgment as a matter of law as to Ruffino's state-law claims based on state-agent immunity; however, Ruffino argues that he is entitled to judgment as a matter of law.

In Alabama, municipal police officers have state-law immunity for "conduct in performance of any discretionary function within the line and scope of his or her law enforcement duties."  Ala. Code § 6-5-338(a).[11]

---

[11]Section 6-5-338 states:

(a)  Every peace officer . . . who is employed or appointed pursuant to the Constitution or statutes of this state, whether appointed or employed as such peace officer by the state or a county or municipality thereof, . . . and whose duties prescribed by law . . . include the enforcement of, or the investigation and reporting of violations of, the criminal laws of this state, and who is empowered by the laws of this state to execute warrants, to arrest and to take into custody persons who violate, or who are lawfully charged by warrant, indictment, or other lawful process, with violations of, the criminal laws of this state, shall at all times be deemed to be officers of this state, and as such *shall have immunity from tort liability arising out of his or her conduct in performance of any discretionary function within the line and scope of his or her law enforcement duties.*

(b)  *This section is intended to extend immunity only to peace officers and governmental units or agencies authorized to appoint peace officers.* . . .

Ala. Code § 6-5-338 (a)-(b)(emphasis added).

> A State agent *shall* be immune from civil liability in his or her personal capacity when the conduct made the basis of the claim against the agent is based upon the agent's . . . (4) exercising judgment in the enforcement of the criminal laws of the State, including, but not limited to, law-enforcement officers' arresting or attempting to arrest persons, or serving as peace officers under circumstances entitling such officers to immunity pursuant to § 6-5-338(a), Ala. Code 1975.

*Hollis v. City of Brighton*, 950 So. 2d 300, 309 (Ala. 2006).  However, "a State-agent *shall not* be immune from civil liability" in his individual capacity either:  (1) when required by law; or (2) "when the State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law."  *Ex parte Cranman*, 792 So. 2d 392, 405 (Ala. 2000).  State law does not require that immunity be unavailable to Glover.

Courts in Alabama utilize a "burden-shifting process when a party raises the defense of State-agent immunity."  *Ex parte Kennedy*, 992 So. 2d 1276, 1282 (Ala. 2008) (citing *Ex parte Estate of Reynolds*, 946 So. 2d 450, 452 (Ala. 2006)).  A state-agent asserting immunity bears the initial "burden of demonstrating that the plaintiff's claims arise from a function that would entitle the State-agent to immunity."  *Id.*  (citing *Ex parte Estate of Reynolds*, 946 So. 2d at 452).  Should he do so, "the burden shifts to the plaintiff to show that one of the two categories of exceptions to State-agent immunity recognized in *Cranman* is applicable."  *Id.*  The applicable *Cranman* standard specifically provides immunity to state-agents performing or attempting to perform an arrest.  *Cranman*, 792 So. 2d at 405.

In this case, the parties do not dispute that, at the time of the relevant conduct, Glover was "exercising judgment in the enforcement of the criminal laws of the State."  *See Hollis*, 950 So. 2d at 309.  Therefore, the burden shifts to Ruffino to prove that Glover acted "willfully, maliciously, fraudulently, in bad faith, beyond his . . . authority, or under a mistaken interpretation of the law."  *Cranman*, 792 So. 2d at 405.

In *Borders v. City of Huntsville*, 875 So. 2d 1168, 1179 (Ala. 2003), the Alabama Supreme Court addressed the issue of "whether a peace officer making a warrantless arrest on a charge based upon conduct the officer witnessed is entitled to discretionary-function immunity in a subsequent civil action after the arrestee is acquitted." The Alabama Supreme Court resolved the question by determining that the absence of arguable probable cause defeats the officer's claim to immunity under Ala. Code § 6-5-338. *Borders*, 875 So. 2d at 1180.

### a. False Imprisonment

False imprisonment, under Alabama law, is the "unlawful detention of the person of another for any length of time whereby he is deprived of his personal liberty." Ala. Code § 6-5-170. "If a police officer has no arguable probable cause under the Fourth Amendment to arrest a plaintiff without a warrant for disorderly conduct, no probable cause exists for the purpose of plaintiff's state law claim of false imprisonment." *Harris v. City of Prattville*, No. 2:07-CV-349-WHA, 2008 WL 2704684, *16 (M.D. Ala. July 7, 2008) (citing *Stovall v. Allums*, No. 1:04-CV-659-F(WO), 2005 WL 2002069, *9 (M.D. Ala. Aug. 16, 2005)(citing *Nesmith v. Alford*, 318 F.2d 110, 122 (5th Cir. 1963)(equating Alabama's probable cause standard for malicious prosecution with the federal standard))). Also, without arguable probable cause to effectuate a warrantless arrest, a police officer is not entitled to state-agent immunity. *Harris*, 2008 WL 2704684, at *16 (applying Alabama law established in *Borders*, 875 So. 2d at 1181-82).

For purposes of defendants' Motion for Summary Judgment and consistent with its finding above, the court finds that Glover acted without arguable probable cause to arrest Ruffino. Accordingly, absent arguable probable cause, Glover is not entitled to state

immunity as to plaintiff's state law claim of false imprisonment.  Thus, defendants' Motion for Summary Judgment with respect to this claim was denied.

Further, viewing the facts in the light most favorable to defendants, the court finds that the material facts are not disputed and that Ruffino is entitled to judgment as a matter of law.  Therefore, Ruffino's Motion for Partial Summary Judgment was granted.

### b. Malicious Prosecution

As discussed above, to establish his state law claim for malicious prosecution, Ruffino must prove that Glover initiated the prior criminal proceeding against him without probable cause and with malice, that the proceeding was resolved in his favor, and that he suffered damages.  *Delchamps*, 738 So. 2d at 831-32.  Defendants argue that Glover is entitled to judgment as a matter of law because, even if Ruffino could prove that Glover acted without probable cause in initiating the prosecution, he cannot demonstrate that Glover acted with malice.  (Doc. 58-1 at 30.)

As set forth above, the evidence is undisputed that the charges against Ruffino were based solely on Glover's Complaint.  Viewing the facts in the light most favorable to Ruffino, that Complaint contained false allegations.  Based on this evidence, a reasonable jury could find that Glover acted "fraudulently," such that he is not entitled to immunity.

Therefore, defendants' Motion for Summary Judgment as to plaintiff's state-law malicious prosecution claim against Glover was denied.

Alabama law provides that a state agent may be entitled to immunity, despite a misrepresentation, if the misrepresentation was not intentional.  *See Ex parte Auburn University*, 6 So. 3d 478, 486-89. (Ala. 2008)(quoting *Segrest v. Lewis*, 907 So. 2d 452, 456-57 (Ala. Civ. App. 2005)).  Viewing the facts in the light most favorable to defendants, a

reasonable jury could find Glover was entitled to immunity under state law because he did not intentionally misrepresent the facts in the Complaint.

Thus, the court denied Ruffino's Motion for Partial Summary Judgment as to his state-law malicious prosection claim.

### c. Assault and Battery

Under Alabama law, excessive force during an arrest constitutes assault and battery. *Franklin v. City of Huntsville*, 670 So. 2d 848, 852-53 (Ala. 1995).   Also, "[B]efore any force can be used in making an arrest, probable cause must exist to make a lawful arrest." *Id*. at 852, *quoted in Mann v. Darden*, 630 F. Supp. 2d 1305, 1316 (M.D. Ala. 2009). Therefore, without probable cause to arrest Ruffino, Glover had no discretion to willfully touch him.

Because the court has found, *supra*, Glover had no probable cause to arrest Ruffino, it now finds, as a matter of law, that Glover's use of force to arrest Ruffino constituted an assault and battery.   Thus, defendant's Motion for Summary Judgment was denied and plaintiff's Motion for Partial Summary Judgment was granted as to plaintiff's assault and battery claim.

### 2. The City

Alabama law provides:

> No city or town shall be liable for damages for injury done to or wrong suffered by any person or corporation, unless such injury or wrong was done or suffered through the ***neglect, carelessness or unskillfulness*** of some agent, officer or employee of the municipality engaged in work therefor and while acting in the line of his or her duty . . . .

Ala. Code. § 11-47-190 (emphasis added).   "As 'unskillful' is used in § 11-47-190, it means lacking in skill or proficiency."   *City of Birmingham v. Thompson*, 404 So. 2d 589 (Ala. 1981)(internal quotations omitted).   "Where a plaintiff alleges a factual pattern that

44

demonstrates neglect, carelessness, or unskillfulness, the plaintiff has stated a cause of action under Section 11-47-190." *Hardy v. Town of Hayneville*, 50 F. Supp. 2d 1176, 1191 (M.D. Ala. 1999).

Viewing the facts in the light most favorable to Ruffino, his state law claims of assault and battery and false imprisonment against the City may be cognizable under § 11-47-190. The Alabama Supreme Court has held that a claim against a municipality alleging that its police officer used excessive force in effecting an arrest may be cognizable under § 11-47-190 as a "negligent assault and battery." *Franklin v. City of Huntsville*, 670 So. 2d 848, 852-53 (Ala. 1995). The theoretical underpinning of such holding appears to rely on a finding that the amount of force used by the officer was greater than that which a skilled or proficient officer would use in similar circumstances. *See id.*; *see also City of Birmingham v. Thompson*, 404 So. 2d 589 (Ala. 1981)("This case was submitted to the jury on the theory that an agent of the City of Birmingham had used 'excessive force' upon the plaintiff . . . . That is the equivalent of asserting an assault and battery not measured or patterned for the circumstances, or an unskilled response . . . . In either case a lack of response measured by the circumstances could have been due to his 'unskillfulness' as an officer confronted by either of those circumstances. As 'unskillful' is used in § 11-47-190, it means 'lacking in skill or proficiency.' An assault and battery committed under either circumstance, because 'unskilled,' would be a negligent assault and battery because it would fall below that response which a skilled or proficient officer would exercise in similar circumstances.").

Viewing the evidence in the light most favorable to Ruffino, the court finds a reasonable jury could find that Glover arrested Ruffino without probable cause because of his lack of training and that, during this arrest, he used force to arrest Ruffino. Thus, the

45

court denied defendants' Motions for Summary Judgment as to the false imprisonment and assault and battery claims against the City.

However, viewing the evidence in the light most favorable to the City, a the court finds a reasonable jury could find that Glover did not arrest Ruffino because of a lack of training on the elements of disorderly conduct based on Glover's testimony that he was aware of the elements of disorderly conduct.  A question of fact exists as to whether the City is entitled to immunity as to Ruffino's state-law claims.  Therefore, plaintiff's Motion for Partial Summary Judgment against the City was denied.

### 3. Intentional Infliction of Emotional Distress

In his Brief in Response to Defendants' Motion for Summary Judgment, Ruffino states that he is withdrawing his claim of intentional infliction of emotional distress.  (Doc. 60 at 21 n.6.)  Therefore, defendants' Motion for Summary as to plaintiff's claim of deliberate indifference was granted and this claim was dismissed.

## CONCLUSION

For the forgoing reasons the court reaffirms its prior Order in this case.  An separate Order granting in part and denying in part the parties Motions for Summary Judgment will be entered contemporaneously with this Memorandum Opinion.

**DONE**, this 29th day of August, 2012.

*Sharon Lovelace Blackburn*
_____
SHARON LOVELACE BLACKBURN
CHIEF UNITED STATES DISTRICT JUDGE